UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | | |
| CHARLES R. ROSE | CH: 11 | 2:07-BK-05284-EWH |
| DERRICK COLLINS vs CHARLES R. ROSE | | ADV: 2-08-00033 |
| DEBTOR'S MOTION TO ALTER/AMEND JUDGMENT OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL | | |

U.S. Bankruptcy Court
230 N. First Avenue, Suite 101
Phoenix, AZ 85003-1706

September 30, 2010
11:21 a.m.

BEFORE THE HONORABLE EILEEN W. HOLLOWELL, Judge

APPEARANCES:

For Charles R. Rose: Allan D. NewDelman
ALLAN D. NEWDELMAN, P.C.
80 E. Columbus Ave.
Phoenix, AZ 85012

Pro Se: Derrick Collins (Telephonic)
Shirley Allman-Collins (Telephonic)
2243 N. El Sereno
Altadena, CA 91001

Proceedings recorded by electronic sound technician, Annette Aguilar; transcript produced by AVTranz.

THE CLERK: In the case, 07-5284, Charles R. Rose, Adversary 08-33.

MR. NEWDELMAN: Good morning. Allan NewDelman on behalf of Charlie Rose.

THE COURT: I believe Mr. Collins is on the phone?

MS. COLLINS: We're both here, Your Honor.

MR. COLLINS: Yes, ma'am.

THE COURT: Okay. Ms. Collins, yet again, it's only your husband who can speak, okay?

All right. Mr. NewDelman, your motion. Go ahead with your argument.

MR. NEWDELMAN: Your Honor, I'm not going to add too much to my motion. I think we laid out our position pretty clear in our motion. There was a very short response, and then we replied to just kind of -- kind of restate our position again.

The importance, however, to Mr. Rose of this finding is -- is very heavy. Mr. Rose is in the financial industry working for insurance companies doing basically adjustment work, and I simply can't permit a finding of fraud against Mr. Rose on the facts that were presented to this Court. His future revenues, his ability to fund a plan, his ability perhaps to get bonds in certain situations could all have a devastating effect upon this plan and his reorganization coming out of bankruptcy.

And on the basis of the evidence presented to the Court, we simply cannot find that this Court could have ruled that Mr. Rose committed fraud to Mr. Collins. Simply stated, you had warned Mr. Collins repeatedly, repeatedly, through all the preliminary meetings we had that if he doesn't get legal counsel he will be held to the same standard as an attorney appearing on -- in a representative capacity. And what we have in the record here is repeated, repeated, repeated inferences of agency. My opening statements, which I will confess is not evidence, simply states that Mac McDaniels was the agent of Mr. Collins. That is not evidence.

I'll leave that one alone. But time, after time, after time, in the record, there are questions asked of Manuel Illuminardi referring to Mr. McDaniel as the agent of Mr. Collins. There was no timely objection as to form. There was no timely objection as to foundation. The answer responded, "Yes," he was dealing with Mr. Collins's agent.

We are not talking about a real, true, perhaps, agency under California law. It doesn't need to be an actual agency. Mr. Collins responds, maybe someone helped him because it looked like a very simple, one-paragraph response, "What Mr. Rose believes simply is not important." No, that's the whole crux of our case. What Mr. Rose believes is essential to our case. It's essential because under the definition of ostensible agency, under California law, which is the same as

an apparent agency, Mr. Collins has put into a course of conduct events. Events in which he himself controlled in turning all matters over to Mac McDaniels, someone who he had a six, seven year relationship doing work for him. He did not attend meetings. He elected not to. He was not there at the meetings. He elected not to. He relied on Mr. McDaniels to put this deal together for him. He relied on the money being transferred through Mr. McDaniel. He dropped off a check and says, "I have to leave, Mac. You take care of this matter."

As you remember, Mr. Rose never, ever, ever had a single meeting or discussion with Mr. Collins before that date in which Mr. Collins departed with his funds. Everything was through Mac McDaniels. And so if anyone put out on the table here to the world that you may deal with someone, and that someone is Mac McDaniel, it's Mr. Collins who put Mr. McDaniels on the podium and says, "You are to deal with this individual."

And as far as belief is concerned, if you look at the definition under the California civil code of ostensible agency, there are two agencies: You've got the actual agency which Mr. Collins denies that it was an actual agency. You don't need it. California, under Civil Code 9, California Civil Code 2298 recognized "An agency may be either actual or ostensible. An agency is actual when the agent is really employed by the principle." That's under Code Section 2299 of subdivision 9. But under 9, Civil Code 2300, "An agency is

ostensible when the principle intentionally or by want of ordinary care causes a third party to believe another to be his agent who is really not employed by him."

So nothing in this record would indicate that Mac McDaniel was anything other than either an agency-in-fact by employment; or, at the minimum, an agency by a -- an ostensible or an apparent agency, because that's how Mr. Collins for a lack of effort or a lack of taking a position otherwise notified the world that they may deal with his agent.

Now repeatedly I would ask the question --

THE COURT: That doesn't make it evidence, Mr. NewDelman. I've read your brief, and you've said -- you've highlighted every place for me where you referred to Mr. McDaniel as the agent. That is not an establishment of agency.

MR. NEWDELMAN: And --

THE COURT: It's a question.

MR. NEWDELMAN: And answers by various people: Answers by Charlie rose; answers, responses by Manual Illuminardi that -- that Mr. McDaniel was the agent. Not only came up in the question to which there was lack of objection to form or foundation, but even in the answers to it by Manuel Illuminardi holding Mr. McDaniel as the agent.

You got to look at your own comments, commentary.

THE COURT: No. You recited one comment to me over

and over again to me, Mr. NewDelman. I've read the record.

MR. NEWDELMAN: Okay.

THE COURT: I've read your pleading.

MR. NEWDELMAN: And it's interesting --

THE COURT: One comment about an evidentiary objection. I looked at the entire record.

MR. NEWDELMAN: Right.

THE COURT: And I looked at all of the evidence.

So anything else?

MR. NEWDELMAN: No. But it's interesting to note that even Mr. Collins, with no legal education, it was interesting, by the time he got halfway through, halfway through the testimony, by the time we got to page 69, when you stated, "This appears to be an admission against interest because the statement was made by agent," even then it was no longer Mr. Collins saying, "Can I object to that, Your Honor? That doesn't seem right." No, we actually have Mr. Collins, by page 69 so sophisticated in his legal training after an hour saying, "Judge, hearsay." And you said, "Overruled, but it seems to be an admission against interest because Mr. McDaniel appears to be agency."

The point I'm making is, where did you use the word, at all, through this transcript, in my defense of Mr. Rose, that Mr. McDaniel was in fact a facilitator other than in your conclusion, which appears to me that you felt sorry for them.

You --

THE COURT: Mr. NewDelman, that's not an appropriate argument.

MR. NEWDELMAN: There was not a --

THE COURT: You can tell me I made a mistake. Let's not -- let's not project why --

MR. NEWDELMAN: We believe --

THE COURT: -- you believe I made a mistake.

MR. NEWDELMAN: We believe you made a mistake.

THE COURT: And that's fine.

MR. NEWDELMAN: You never hinted at all that this was a facilitator. You did not give Mr. Rose the opportunity then to call Mac McDaniel. Mr. McDaniel was on both party's lists, remember.

THE COURT: And no one produced him, did they --

MR. NEWDELMAN: Hold --

THE COURT: -- including you, Mr. NewDelman.

MR. NEWDELMAN: Hold on. Wait a minute. Because I --

THE COURT: No. That's outside the record. Don't tell me why he wasn't here.

MR. NEWDELMAN: Well --

THE COURT: He wasn't here.

MR. NEWDELMAN: -- he was here -- ability to testify telephonically, because: 1, I called Mac McDaniel two days

before the trial.

THE COURT: Wait, wait, wait. We're way outside the record. This is a motion for reconsideration based on the evidence that was in front of me. Mr. McDaniel was on both lists. He wasn't called. He didn't testify. Don't tell me how you had conversations with him --

MR. NEWDELMAN: He could not have been called.

THE COURT: Mr. NewDelman, I don't want to hear that. I've told you that three times. It's not appropriate to talk to me about things outside the record. This is a motion for new trial based on the record that I had. Okay?

MR. NEWDELMAN: But on the record we have today, we simply can't find that this Court could hold my Debtor Defendant to the elements of fraud on the basis that everything to which you're pointing a figure that he committed fraud was fully divulged, discussed fully, with Mac McDaniel. There's no evidence that the issues that created the position of fraud was not fully directed and informed of Mac McDaniel. You simply would not come to the conclusion that Mac McDaniel wasn't, in fact, in any shape or form, either an actual, apparent, or an agency, an ostensible agent of Mr. Collins.

And we believe, Your Honor, that that was error.

THE COURT: Understood.

Mr. Collins only. Anything from you, Mr. Collins?

MR. COLLINS: Yes, ma'am.

I kind of agree with you on your decision on what you based the whole trial on, on everybody's testimony and what they portrayed theirself as, and how the carried theirself in the business. They never altered the lamb (sic) from the get-go, from when he signed the promissory note.

THE COURT: And, Mr. Collins, that isn't what's in front of me. Let's not talk about what wasn't ever determined.

MR. COLLINS: Okay.

THE COURT: Okay. All right.

MR. COLLINS: Other than that -- other than that, ma'am, Mr. McDaniels was no longer -- he not an agent to me. He was like -- he had no contract, you know. They had all the paperwork, you know. So I agree with you on your decision, on how you based everything, in a nutshell. That's the way it went down. That's the way -- I agree to it.

So the evidence of the testimony, it was all in front of everybody, ma'am. So I agree with your decision on how you based everything.

THE COURT: All right. Thank you, Mr. Collins.

Anything else, Mr. NewDelman?

MR. NEWDELMAN: Nothing further.

THE COURT: Okay.

MR. COLLINS: Thank you.

THE COURT: Okay. This is a Rule 59 motion for new trial based on either there's new evidence or mistake. I don't

think there's any new evidence. The evidence was what it was.

The evidence in front of me was that Mr. Illuminardi approached Mr. McDaniel with the possibility of an investment. Mr. McDaniel in turn approaches Mr. Collins. Mr. McDaniel was not called as a witness.

My determination was that there had been a material omission by the Debtor of certain facts that only the Debtor knew. Nothing in your argument, Mr. NewDelman, convinces me that there was an apparent agency here. If anything, it seems more likely to me that Mr. McDaniel was acting as an agent for -- whatever the insurance company was.

MR. NEWDELMAN: Gibraltar.

THE COURT: -- Gibraltar or Mr. Illuminardi than anybody else. But I didn't have to come to that finding.

The finding I came to was that there had been a failure of the Debtor to inform the payee on the note that he couldn't pay it, and that he thought a third party would pay it. I don't believe that disclosures to Mr. McDaniel constituted disclosure to Mr. Collins on the facts as I heard them at the trial.

So if I made a factual error, you'll have to take it up with an Appellate Court, because I don't find any new evidence, and I don't find -- not surprisingly as Mr. NewDelman knows that Judges hardly ever think they're wrong. But I spent a lot of time with the record, and I spent a lot of time

listening at the trial. And if I've made a mistake, then you're going to have to go to the Appellate Court.

So let's talk about that for a minute, because the Collinses are not represented, and I want them to understand what's going to happen next. So what's happened, Mr. and Mrs. Collins, without requiring anything more from Mr. NewDelman unless he wants a further order, is I'm denying his motion for reconsideration.

But he may want to take an appeal. And if he does want to take an appeal, then he's going to want to request a stay, which means that that would -- that he wouldn't be able to enforce the judgment pending the stay. I don't know, Mr. NewDelman, if you are going to want to file a notice of appeal.

MR. NEWDELMAN: Your Honor, we will be filing a notice of appeal. Most likely I'm considering taking it to the BAP.

As far as the stay is concerned, I -- we could discuss it a little bit today. As far as the stay is concerned, this is an individual Chapter 11 bankruptcy case. So in an individual bankruptcy case, I can't imagine that Mr. Collins -- I mean, excuse me, Mr. Rose owns anything except either exempt property or property of the bankruptcy estate, which would include his earned wages. So as far as the effectiveness of a judgment, I think if Mr. Collins attempts to

try to execute on the judgment against anything owned by Mr. Rose, it would either be exempt property, which would be improper; or, 2, it would be a seizure of property of the bankruptcy estate, because I don't believe there's -- there's any assets at the moment that would simply not be considered property of the bankruptcy estate.

THE COURT: So you believe that the -- Mr. Rose is protected by the bankruptcy stay, and we won't need to talk about a stay pending appeal.

MR. NEWDELMAN: I'll look at it further. But I can't imagine, now that they changed BAP in 2005 --

THE COURT: Right. Everything is property of the estate.

MR. NEWDELMAN: -- earned wages is property of the estate. So I -- if Mr. Collins goes out and tries to execute it, he may be facing a violation of the 52(a). But --

THE COURT: Well, Mr. Collins, I --

MR. COLLINS: How's that, Your Honor, after he committed fraud against me? I'm just trying to collect my debt that's being owed --

THE COURT: Well, Mr. Collins, here's the deal. You can't do anything for the next ten days, because --

MR. COLLINS: Yes, ma'am.

THE COURT: -- I'm telling, you can't do anything for the next ten days.

MR. NEWDELMAN: Or is that 14.

THE COURT: Well, it's -- I'm sorry. It's 14 days.

Mr. NewDelman, I'm re-thinking this. Submit an order denying the motion for reconsideration. And then because Mr. Collins is pro se and doesn't have a lawyer, I'm not going to rule on what he can execute any judgment on, and I'm not going to prospectively rule on any stay pending appeal.

What I'm going to tell you though, Mr. Collins, is there may be more hearings to talk about your power to execute on your judgment while Mr. NewDelman files an appeal. All right? So --

MR. COLLINS: Yes, ma'am.

THE COURT: -- for right now, you know, you still have prevailed in the adversary.

MR. COLLINS: Yes, ma'am.

THE COURT: You can't do anything to execute on the judgment for at least 14 days, and possibly beyond. All right?

MR. COLLINS: All right.

THE COURT: And you want to be very careful about that, and communicate with Mr. NewDelman about it, because you don't want to be in a position that you improperly try to enforce your judgment, okay?

MR. COLLINS: Yes, ma'am.

THE COURT: All right. Good enough.

MR. COLLINS: Thank you.

THE COURT: Thank you, Mr. NewDelman.

MS. COLLINGS: Thank you.

MR. NEWDELMAN: Okay. Thank you.

(Proceedings Concluded)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated: October 20, 2010

Tami S. Mayes

AVTranz, Inc.
845 N. Third Avenue
Phoenix, AZ 85003